# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 2:06CR00023 |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **ROY SILAS SHELBURNE**, ) | By: James P. Jones |
| ) | Chief United States District Judge |
| Defendant. ) | |

*Anthony P. Giorno, Assistant United States Attorney, and Michelle B. Brooks, Special Assistant United States Attorney, Roanoke, Virginia, for United States of America; Dennis E. Jones, Dennis E. Jones & Associates, P.C., Lebanon, Virginia, for Defendant.*

The defendant, Roy Silas Shelburne, a dentist, was convicted by a jury in this court after a nine-day trial of crimes related to a scheme to defraud Medicaid by submitting bills for services that were not performed, were paid for by others, or were not medically necessary. The specific crimes of which he was convicted are racketeering (Count One), 18 U.S.C.A. § 1962(c) (West 2000); structuring a transaction to evade financial reporting requirements (Count Two), 31 U.S.C.A. § 5324(a)(1), (3) (West 2003); money laundering (Counts Three through Nine), 18

U.S.C.A. § 1956(a)(1)(A)(i) (West 2000 & Supp. 2008); and defrauding a health care benefit program (Count Ten), 18 U.S.C.A. § 1347 (West 2000).[1]

Following the jury's verdict, the defendant filed a Motion for Judgment of Acquittal or New Trial and a separate Motion to Arrest Judgment as to Count 10. These motions have been briefed and argued and are ripe for decision.[2]

I

Medicaid is a government health care program, funded with state and federal monies and administered by state governments. In Virginia, the state agency involved is the Department of Medical Assistance Services ("DMAS"). Dr. Shelburne was a

---

[1] The structuring charge (Count Two) was not directly part of the scheme to defraud, but I found that it was sufficiently related and denied the defendant's Motion to Sever that charge. *United States v. Shelburne*, No. 2:06CV00023, 2008 WL 474094, at *3-4 (Feb. 21, 2008).

[2] The defendant sought and obtained four extensions of time to file post verdict motions, which extensions were permitted by Federal Rule of Criminal Procedure 45(b)(1). The motions were finally filed on May 12, 2008, the deadline under the fourth extension. However, the memorandum in support of the motions, setting forth the grounds thereof, was not filed until May 16, 2008. It is generally held that the grounds of a motion must be contained in the motion, or otherwise filed within the deadline. *See, e.g., United States v. Hall*, 854 F.2d 1269, 1271-72 (11th Cir. 1988). Nevertheless, the government has not objected on this procedural ground, and I have the power under Rule 45(b)(1)(B) to extend the time even after it has expired. Because counsel for the defendant was experiencing computer problems, and in the absence of any prejudice to the government, I will extend the time for filing the grounds of the motions to May 16, 2008.

registered Medicaid provider in Virginia and provided general dental services from his office in Pennington Gap.

At trial, the government contended that the defendant engaged in a scheme to defraud Medicaid by billing DMAS for services that were either not performed, paid for by other insurance, or medically unnecessary.

In its case in chief, the government called several of Dr. Shelburne's former employees, who testified as to their concern about certain of Dr. Shelburne's dental procedures, as well as his emphasis on maximizing revenues and minimizing time spent with patients. The government also called four local dentists, who characterized Dr. Shelburne's work as subpar.

At the center of the government's case was Dr. Shelburne's performance of pulpotomies (removal of part of the pulp of a tooth) on teeth of children who had Medicaid coverage. As one example, the government called a witness whose six-year-old son underwent pulpotomies on four teeth in one sitting. Dr. Shelburne wanted to perform four more pulpotomies on the child, but the mother refused because of the child's distress. The child was later seen by another dentist, who testified at trial that he found no evidence that the pulpotomies Dr. Shelburne performed or those scheduled to be performed were actually needed.

At trial, both the government and the defendant relied on retained dental experts who had extensively reviewed Dr. Shelburne's records, as well as personally examining and evaluating some of his patients. Both experts were well-qualified but their opinions were dramatically different. Dr. Marquetta Poynter, the government's expert, found that Dr. Shelburne had performed unnecessary procedures; Dr. Susan Phillips, the defense expert, found Dr. Shelburne's work to be acceptable and any incorrect billings to DMAS shown by the record to be only the normal errors produced in any dental office. Dr. Shelburne testified on his own behalf and denied any intent to defraud.

In his post verdict motions, the defendant contends that the evidence was insufficient to convict and requests judgment of acquittal or, in the alternative, a new trial.[3]

---

[3] The defendant moved separately under Federal Rule of Criminal Procedure 34(a)(1) to arrest judgment as to Count Ten (defrauding a health care benefit program) on the ground that the indictment does not charge an offense, but he did not discuss that motion in his memorandum or at oral argument. In any event, I find that Count Ten of the indictment does sufficiency charge an offense. *See United States v. Vogt*, 910 F.2d 1184, 1200-01 (4th Cir. 1990) ("When a post-verdict challenge to the sufficiency of an indictment is made, 'every intendment is then indulged in support of . . . sufficiency.'") (quoting *Finn v. United States*, 256 F.2d 304, 307 (4th Cir. 1958)).

II

The convictions here must be sustained if, viewed in the light most favorable to the government, there is substantial evidence to support them. *See Glasser v. United States*, 315 U.S. 60, 80 (1942). In the context of a criminal action, the Fourth Circuit has defined substantial evidence as "that evidence which 'a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *United States v. Newsome*, 322 F.3d 328, 333 (4th Cir. 2003) (quoting *United States v. Burgos*, 94 F.3d 849, 862-63 (4th Cir. 1996) (en banc)). In evaluating the sufficiency of the evidence, the court does not review the credibility of the witnesses, but assumes that the jury resolved all contradictions in the testimony in favor of the government. *See United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998).

In making a sufficiency determination, the court must evaluate the cumulative evidence in its totality—in other words, "we must not rend the garment of which the evidence is woven lest we analyze each individual fiber in isolation." *Burgos*, 94 F.3d at 863. This concept is of particular importance in the present case, where there

was a mass of evidence concerning the treatment by Dr. Shelburne of a number of different patients.[4]

The defendant argues that the evidence showed that he acted in good faith in his dental practice, with no intent to defraud.[5] Similarly, he contends that he acted with a "legitimate medical purpose and within the bounds of accepted medical practice." (Mem. Supp. Mot. J. Acquittal or New Trial 11.) I agree that his evidence supported such a defense, but there was substantial evidence to the contrary. A verdict in Dr. Shelburne's favor certainly would have been plausible and equally supportable. Under our system of justice, however, the jury's view of the evidence cannot be set aside where, as here, there was substantial evidence to support it.

In accord with the principles that I have described, I find that there was sufficient evidence for the jury to find as it did that the defendant engaged in the pattern of racketeering activity charged in Count One, and that he committed the fraud charged in Count Ten.

---

[4] For example, the testimony of the defense expert, Dr. Phillips, in which she opined as to Dr. Shelburne's treatment of each of the relevant patients, spanned three days.

[5] At the defendant's request, I instructed the jury that the defendant's good faith was an absolute defense, and that good faith included having "a belief or opinion honestly held" or making an "honest mistake in judgement or error in management." (Instruction No. 26A.)

- 6 -

Count Two of the indictment charged the defendant with structuring a transaction to evade financial reporting requirements in violation of 31 U.S.C.A. § 5324(a)(1), (3). The charge arose after the government began its investigation in the present case, when Dr. Shelburne purchased an expensive automobile for his daughter Erica from Rick Hill Imports, a Mercedes dealership in Kingsport, Tennessee. Dr. Shelburne does not contest that he engaged in substantial cash transactions just below the reporting amount, but he contends that they were innocent, with no intent to evade the law.

While the evidence concerning Dr. Shelburne's intent was circumstantial, as most proof of intent is, I agree with the government that it was adequate to uphold the jury's verdict. Again, the jury might have believed Dr. Shelburne's explanations, but it was not required to do so.

The defendant alternatively moves for a new trial on all of these counts, also based on the insufficiency of the evidence. A new trial on this ground is to be granted only "sparingly" in the "rare circumstance when the evidence weights heavily" against the jury's verdict. *United States v. Singh*, 518 F.3d 236, 249 (4th Cir. 2008) (internal quotation omitted). While the evidence in this case would have supported a verdict either way, I cannot say that it falls into the narrow class of cases where I am permitted to disregard the result and grant a new trial before a different jury. Our

jury system, enshrined as it is in our Constitution, would not count for much if a jury's verdict could be set aside simply because the judge might have decided the case differently.

III

The issues surrounding the money laundering charges (Counts Three through Nine) are more problematic, especially in light of the recent Supreme Court decision in *United States v. Santos*, 128 S. Ct. 2020, decided June 2, 2008, following Dr. Shelburne's trial.

Dr. Shelburne was charged under the part of the money laundering statute that provides as follows:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity . . . shall be [punished].

18 U.S.C.A. § 1956(a)(1)(A)(i).[6] The indictment alleged and the government offered proof that Dr. Shelburne paid expenses of his dental practice on seven different

---

[6] The money laundering statute also punishes "concealment" transactions, where the government must prove that a transaction was intended to conceal or disguise the proceeds of the unlawful activity. *See* 18 U.S.C.A. § 1956(a)(1)(B) (West 2000 & Supp. 2008). Dr. Shelburne was not charged with a concealment offense.

- 8 -

occasions from his business checking account, which at those times included money received from Medicaid from the alleged fraudulent scheme. In its brief, the government accurately details the evidence it presented at trial in support of the money laundering charges, as follows:

> The evidence of money laundering at trial consisted of the testimony of IRS SA Trevor McMurray. His testimony established that on February 11, 2002, Shelburne treated JAMES A. OWENS. He is RICO Act 35. Shelburne was paid via auto deposit from First Health Services with Remittance 5021567 dated February 22, 2002. This deposit was credit to Shelburne's account on February 25, 2002 in the amount of $10,433.39. On February 28, 2002, Shelburne wrote himself payroll check 16014 for $6,782.92. (Count Three)
>
> On May 15, 2002, Shelburne treated BRANDON L. MULLINS. He is RICO Act 31. Shelburne was paid via auto deposit from First Health Services with Remittance 5050514 dated May 31, 2002. This deposit was credit to Shelburne's account on June 3, 2002 in the amount of $11,180.60. On June 5, 2002, Shelburne wrote a check payable to Patterson Dental Supply for $9,003.38. (Count Four)
>
> On September 12, 2002, Shelburne treated JESSIE and TERRI CALTON. They are RICO Act 22. Shelburne was paid via auto deposit from First Health Services with Remittance 5030620 dated September 27, 2002. This deposit was credit to Shelburne's account on September 30, 2002 in the amount of $5,643.39. On September 26, 2002, Shelburne wrote a check payable to Shelburne Enterprises LP for Lease of Equipment for $1,637.00. On October 1,2002, Shelburne transferred $2,500.00 from his corporate business account to the account of Shelburne Enterprises LP account for Building Lease. (Count Five and Six)
>
> On April 21, 2003, Shelburne treated PATRICK JONES. He is RICO Act 12. Shelburne was paid via auto deposit from First Health

Services with Remittance 5117076 dated May 9, 2003. This deposit was credit to Shelburne's account on May 12, 2003 in the amount of $8,856.80. On May 14, 2003, Shelburne wrote a check payable to Patterson Dental Supply for $5,971.92. (Count Seven)

On May 13 and 15, 2003, Shelburne treated JOHNNY MULLINS. He is RICO Acts 9 & 10. Shelburne was paid via auto deposit from First Health Services with Remittance 5125899 dated May 30, 2003. This deposit was credit to Shelburne's account on June 3, 2003 in the amount of $16,326.99. On June 2, 2003, Shelburne wrote a check payable to Shelburne Enterprises LP for Lease of Equipment for $1,637.00. (Count Eight)

On June 4, 2003, Shelburne treated CHRISTOPHER HURT. He is RICO Act 7. Shelburne was paid via auto deposit from First Health Services with Remittance 713 dated July 3, 2003. This deposit was credit to Shelburne's account on July 3, 2003 in the amount of $10,728.10. On July 3,2003, Shelburne wrote himself payroll check 17408 for $9,226.25. (Count Nine).

(Gov't's Resp. 10-12.)

The defendant makes two separate legal arguments in support of his motion seeking acquittal as to these counts. He first contends that the government failed to prove that the financial transactions were "proceeds" because that term means net rather than gross revenue. Second, he argues that the government failed to prove the necessary "intent to promote" prong of the offense, because the financial transactions in question were not sufficiently linked to the alleged criminal activity.

- 10 -

## A. WHAT ARE PROCEEDS?

In its recent *Santos* case, the Supreme Court, on a vote of five to four, affirmed the reversal of the "promotion" money laundering convictions of defendant Santos, who ran an illegal lottery business in bars and restaurants in Indiana. 128 S. Ct. at 2022-23. The financial transactions at issue were the defendant's payments to his employees and winners out of the receipts from the lottery ticket sales. *Id*. at 2023. The Court held that these business expense payments were not from "proceeds," meaning profits, of the illegal gambling operation, and thus Santos was not guilty of money laundering. *Id.* at 2031.

There was no evidence presented at trial that Dr. Shelburne's business expenses at issue were paid from profits, rather than gross revenue. Nevertheless, in an effort to save the money laundering convictions, the government relies on the separate opinion of Justice Stevens in *Santos* in which he provided the necessary fifth vote by concurring in the judgment. *See id*. 2031-35. The government contends that under Justice Stevens' narrower reasoning, revenue used to pay business expenses may constitute "proceeds" so long as there is not a "merger" problem, that is, the payment would not be of "an essential expense of an already completed crime." (Gov't's Brief 9.) Under the government's view, *Santos*, as limited by Justice Stevens' opinion, breaks no new ground and simply applies existing circuit law. *See United States v.*

*Heaps*, 39 F.3d 479, 485-86 (4th Cir. 1994) (holding that receipt of the proceeds of a drug sale could not also serve as the predicate of a promotion charge).

I disagree with the government's narrow construction of *Santos*. Even considering Justice Steven's opinion, I find that Dr. Shelburne's payments for building and equipment rent and dental supplies were not from proceeds as that term is properly construed in the money laundering statute.

The government alternately argues that even if these expenses were not from proceeds within the meaning of *Santos*, the two payments of salary to Dr. Shelburne were plainly so, since they could only come from the profits of his specified unlawful activity. I agree and find that the two counts represented by these payments are not disturbed by *Santos*.

For these reasons, I will vacate the convictions under Counts Four, Five, Six, Seven, and Eight.

## B. INTENT TO PROMOTE.

The defendant also contends that the government's evidence was insufficient to prove that the expenditures in question were made with the requisite intent to promote the specified unlawful activity. He argues that because these expenditures were legitimate business expenses of the dental practice, the nexus between them and

- 12 -

fraud (the specified unlawful activity) was insufficient as a matter of law to prove intent to promote in the absence of other evidence.

A case in point is *United States v. Miles*, 360 F.3d 472 (5th Cir. 2004). In that case, the defendants operated a home health care business and defrauded Medicare by obtaining improper reimbursements through a variety of fraudulent schemes, including billing for their personal expenses, billing legitimate expenses at two or three times the actual cost, and billing for fictitious expenses. *Id.* at 475-76. In addition to other charges, two of the defendants were charged with money laundering promotion for paying certain legitimate business expenses—office rent, payroll, and payroll taxes—from the proceeds of the fraud. *Id.* at 476.

The court reversed the money laundering convictions. The court held that in order to convict, the government "must present either direct proof of an intent to promote such illegal activity or proof that a given type of transaction, on its face, indicates an intent to promote such illegal activity." *Id.* at 477. Where the evidence shows only that the expenditures were the "customary costs of running a legal business," the crime of promotion money laundering is not implicated. *Id.* at 479.

The government contends that *Miles* is "simply wrong" (Gov't's Resp. 15), and relies instead on *United States v. Lawrence*, 405 F.3d 888 (10th Cir. 2005), in which the court, without lengthy discussion, upheld a conviction for promotion money

- 13 -

laundering where the suspect transaction involved the payment of rent for the chiropractor's office, since "keeping the doors of the clinic open assisted [the defendant] in carrying out his fraudulent scheme." *Id.* at 901.

Without deciding whether the payment of some legitimate business expenses might constitute promotion of the specified unlawful activity within the meaning of the money laundering statute, I find at the least no evidence that Dr. Shelburne's payment of salary to himself constituted such promotion. The evidence did not show that these funds were plowed back into the unlawful activity or even into the dental practice generally. *See United States v. Jackson*, 935 F.2d 832, 841 (7th Cir. 1991) (holding that defendant's expenditure of proceeds from drug sales used solely to maintain personal lifestyle did not promote specified crime of drug dealing); *see also United States v. Heap*, 39 F.3d at 485-86 (setting aside money laundering conviction of drug dealer for mere receipt of money from drug sale). Indeed, the government's evidence showed that Dr. Shelburne used the money from his dental practice to fund his family's lavish lifestyle.

I will accordingly vacate Dr. Shelburne's convictions under Counts Three and Nine, representing the payments of his salary.

IV

In summary, I find that all of Dr. Shelburne's money laundering convictions must be set aside. I will otherwise affirm all of his remaining convictions. It thus appearing proper, it is **ORDERED** as follows:

1. The Motion for New Trial (#284) is denied;

2. The Motion for Judgment of Acquittal (#284) is granted in part and denied in part;

3. Judgment of acquittal is entered as to Counts Three, Four, Five, Six, Seven, Eight, and Nine of the Superseding Indictment; and

4. The Motion for Judgment of Acquittal is otherwise denied.

          ENTER: July 1, 2008

          /s/ JAMES P. JONES
          Chief United States District Judge